UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TORI SAUNDERS,

                         Plaintiff,

     v.                                                  9:20-CV-1246
                                                                   (TJM/CFH)

C. MILLER, et al.,

                         Defendants.

---

APPEARANCES:

TORI SAUNDERS
17-A-1258
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

      Pro se plaintiff Tori Saunders ("plaintiff") commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") on or about October 9, 2020, with the filing of a complaint.  Dkt. No. 1.  Because plaintiff neither paid the filing fee nor submitted an application to proceed in the action in forma pauperis ("IFP") at the time he filed his complaint, the Court issued an Order closing the action on October 13, 2020.  Dkt. No. 2. Plaintiff thereafter filed an IFP application, and the Clerk reopened the action.  Dkt. Nos. 3, 5.

On December 14, 2020, the Court issued a Decision and Order granting plaintiff's IFP application and conditionally dismissing the complaint pursuant to 28 U.S.C. § 1915 ("Section 1915") and 28 U.S.C. § 1915A ("Section 1915A") unless, within 30 days of the date of the Order, plaintiff filed an amended complaint.  Dkt. No. 6 ("December Order") at 9-10.  After being granted three extensions of the deadline to amend, plaintiff filed his amended complaint with the Court on or about April 28, 2021.  Dkt. No. 14 ("Am. Compl.").

## II.   PLAINTIFF'S AMENDED COMPLAINT

### A.   Governing Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 and 1915A was discussed at length in the December Order and will not be restated in this Decision and Order.  December Order at 3-4.

### B.   Summary of the Amended Complaint

Although plaintiff is now confined elsewhere, at all times relevant to the claims in this action, he was incarcerated in Great Meadow Correctional Facility ("Great Meadow C.F."), Greene Correctional Facility ("Greene C.F."), and Auburn Correctional Facility ("Auburn C.F.").  Am. Compl. at 1, 2.  As defendants, the amended complaint names C. Miller, Great Meadow C.F. Superintendent; Lovett, a senior counselor at Great Meadow C.F.; and D. Venettozzi, Director of Special Housing Unit for the New York State Department of Corrections and Community Supervision.  *Id.* at 1-2.  The following facts are as alleged in plaintiff's amended complaint.

On December 9, 2018, plaintiff was issued an inmate misbehavior report accusing him of, inter alia, fighting with another inmate.  Am. Compl. at 3.  Defendant Lovett

2

commenced a disciplinary hearing on December 14, 2018, in connection with the misbehavior report.[1]  *Id.*  During the hearing, defendant Lovett denied plaintiff's request to have the author of the misbehavior report testify.  *Id.* at 7.  On December 17, 2018, defendant Lovett concluded the hearing, found plaintiff guilty of at least one of the charges, and sanctioned plaintiff to "90 days keeplock confinement in his cell, two months loss of good time credits, with 90 days loss of commissary, package, and phone privileges."  *Id.* at 3-4.  On March 4, 2019, defendant Venettozzi reversed that disciplinary hearing determination.  *Id.* at 4.

On February 1, 2019, prior to the reversal of the disciplinary hearing determination, plaintiff was transferred from Great Meadows C.F. to Greene C.F., where he was housed in the Special Housing Unit ("SHU") until he was transferred to Auburn C.F.  Am. Compl. at 4.  When plaintiff arrived at Auburn C.F. on February 28, 2019, he discovered that one of his property bags was lost or stolen.  *Id.*  Plaintiff alleges that the bag contained "over $500.00 of valuables, including photographs of [his] deceased grandmother."  *Id.*

Based on the foregoing allegations, plaintiff asserts procedural due process claims arising under the Fourteenth Amendment against defendants Lovett, Miller, and Venettozzi.  Am. Compl. at 5-7.  For a complete statement of claims, reference is made to the amended complaint.

---

[1] Defendant Miller designated defendant Lovett to serve as the hearing officer.  Am. Compl. at 3.

3

**C.     Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

To establish a Fourteenth Amendment procedural due process claim under Section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

As explained in the December Order, "[a] prisoner's liberty interest is implicated by prison discipline, such as [keeplock or] SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks and alteration omitted).  In this Circuit, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."  *Davis*, 576 F.3d at 133.

The amended complaint alleges that plaintiff served 90 days of keeplock and/or SHU confinement and lost certain privileges for 90 days.[2]  Am. Compl. at 5.  Thus, to implicate

---

[2] Although defendant Lovett also imposed a two-month loss of good time credits at the conclusion of the hearing, the Court assumes (and the amended complaint does not allege otherwise) that those credits were restored upon reversal of the hearing determination by defendant Venettozzi.

4

plaintiff's liberty interest, the 90-day disciplinary confinement must have been accompanied by conditions "more onerous than usual." *Davis*, 576 F.3d at 133. Keeplock is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord, Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998). Because the amended complaint alleges only that, while on keeplock status, plaintiff was confined to his cell in general population, Am. Compl. at 5, the Court finds that his confinement in keeplock did not deprive him of any liberty interest. *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *5 (W.D.N.Y. May 23, 2007) (dismissing the plaintiff's procedural due process claim because the complaint did not "indicate that [the plaintiff's] 90-day keeplock confinement was 'atypical' or 'significant'"); *Barclay v. New York*, 477 F. Supp. 2d 546, 557 (N.D.N.Y. Mar. 19, 2007) (dismissing the plaintiff's due process claim because plaintiff's allegation that he was confined in keeplock for 90 days was not accompanied by allegations that, inter alia, "describe the differences between his confinement in keeplock and the general population" and concluding that the disciplinary confinement did not "create[] an atypical and significant deprivation from which the State could have created a liberty interest").

     As for SHU, "[u]nder the normal conditions . . ., the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors are permitted, but the frequency and duration is less than in general

5

population. The number of books allowed in the cell is also limited." *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (internal quotation marks and alterations omitted)). Here, plaintiff alleges that, while in SHU, he was "isolated from those in the general population" and was "not allowed to have [his] personal property," which was "placed in storage until the completion of the sanction." Am. Compl. at 5. None of these allegations, however, are out of the ordinary for SHU confinement in New York State, and, for that reason, plaintiff's SHU confinement also fails to implicate a liberty interest under the Fourteenth Amendment. *See, e.g., Crenshaw v. Sciandra*, 766 F. Supp. 2d 478, 482 (W.D.N.Y. 2011) ("Because plaintiff spent a 'relatively brief' period of 94 days in SHU, his due process rights are not implicated, absent a showing that the conditions of his confinement were unusually severe.").

Plaintiff also alleges that, as a result of being transferred from keeplock status at Great Meadow C.F. to SHU in Greene C.F., he lost valuable personal property. *Id.* The Supreme Court has held that even intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). With regard to plaintiff's claims of lost or stolen property, the Second Circuit has recognized that New York provides, "an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (citing *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)).

As for the privileges plaintiff alleges that he lost during his disciplinary confinement, as the Court explained in the December Order, it is well established that prison inmates

have no constitutional right to them, and, for that reason, the loss of privileges also does not trigger a liberty interest. *See, e.g., Montalvo v. Lamy*, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (concluding that "prisoners have no constitutional right to access a commissary"); *Griffin v. Cleaver*, No. 03-CV-1029, 2005 WL 1200532, at *6 (D. Conn. May 18, 2005) (finding that the plaintiff "has no constitutional right to telephone use, social visits and commissary privileges").

Because plaintiff's complaint fails to plausibly allege that his liberty interests were implicated by the disciplinary hearing, his amended complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).[3]

---

[3] Like plaintiff's original complaint, the claims asserted in the amended complaint against defendants Miller and Venettozzi are also subject to dismissal because the amended complaint fails to plausibly allege their personal involvement in any alleged constitutional violation.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. See *Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

In this case, plaintiff alleges only that defendant Miller appointed defendant Lovett to preside over the disciplinary hearing. Am. Compl. at 3. Vicarious liability, however, does not apply to Section 1983 actions, *Iqbal* 556 U.S. at 676, and there are no allegations in the amended complaint that defendant Miller had any other involvement in the disciplinary hearing. Accordingly, plaintiff's claim against defendant Miller is dismissed for lack of personal involvement, as well.

As for defendant Venettozzi, plaintiff's amended complaint alleges that defendant Venettozzi reversed the disciplinary hearing determination. Am. Compl. at 4. Setting aside the obvious question of how defendant Venettozzi could have violated one or more of plaintiff's constitutional violations by *reversing* the determination, the amended complaint fails to allege that defendant Venettozzi was responsible for the due process violations alleged in the complaint. For this reason, plaintiff's claim asserted against defendant Venettozzi is subject to dismissal.

**III.    CONCLUSION**

**WHEREFORE** it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 14) is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk of the Court enter Judgment dismissing this action; and it is further

**ORDERED** that the Clerk of the Court serve on plaintiff a copy of this Decision and Order.

**IT IS SO ORDERED.**

**DATED: June 9, 2021**

Thomas J. McAvoy
Senior, U.S. District Judge